OPINION
In State v. Edwards, Cuyahoga County Court of Common Pleas Case No. CR-347477, applicant was convicted of trafficking in drugs in violation of R.C. 2925.03. This court affirmed the judgment of conviction but remanded the case for resentencing in State v.Edwards (Oct. 29, 1998), Cuyahoga App. No. 73480, unreported.
Applicant has filed with the clerk of this court an application for reopening (Motion No. 3535). Applicant asserts that she was denied the effective assistance of appellate counsel because her appellate counsel did not assign as error that the sentence imposed violates state and federal constitutional prohibitions against cruel and unusual punishment.
We deny the application for reopening. As required by App.R. 26(B)(6), the reasons for our denial follow.
Initially, we note that App.R. 26(B)(1) provides, in part: "An application for reopening shall be filed * * * within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time." This court's decision affirming applicant's conviction was journalized on November 9, 1998. The ninetieth day after journalization was Sunday, February 7, 1999. The application was filed on February 8, 1999 — the first business day after the ninetieth day. The application is, therefore, timely. Cf. App.R. 14 (A). See, also,State v. Jones (Sept. 25, 1997), Cuyahoga App. No. 71178, unreported, reopening disallowed (Mar. 24, 1998), Motion No. 90600.
Applicant did not appeal this court's decision in her direct appeal to the Supreme Court of Ohio. Because applicant could have raised the issue of the ineffective assistance of appellate counsel in an appeal to the Supreme Court of Ohio, the doctrine of res judicata prevents reopening. State v. Perry (May 12, 1994), Cuyahoga App. No. 65455, unreported, reopening disallowed (Dec. 18, 1997), Motion No. 86899.
We also deny the application on the merits. Having reviewed the arguments set forth in the application for reopening in light of the record, we hold that applicant has failed to meet her burden to demonstrate that "there is a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal." App.R. 26(B)(5).
The standard for determining whether counsel has been ineffective is well-settled.
 To establish such a claim, the [applicant] must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington (1984), 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052; State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, cert denied (1990), 497 U.S. 1011, 110 S.Ct. 3258.
State v. Munici (Nov. 30, 1987), Cuyahoga App. No. 52579, unreported, reopening disallowed (Aug. 21, 1996), Motion No. 68671, at 7. In State v. Spivey (1998), 84 Ohio St.3d 24,701 N.E.2d 696, the Supreme Court specified the proof required of an applicant:
 In State v. Reed (1996), 74 Ohio St.3d 534, 535, 660 N.E.2d 456, 458, we held that the two prong analysis found in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, is the appropriate standard to assess a defense request for reopening under App.R. 26(B)(5). [Applicant] must prove that his counsel were deficient for failing to raise the issues he now presents, as well as showing that had he presented those claims on appeal, there was a "reasonable probability" that he would have been successful. Thus [applicant] bears the burden of establishing that there was a "genuine issue" as to whether he has a "colorable claim" of ineffective assistance of counsel on appeal.
Id. at 25. Applicant cannot satisfy either prong of the Strickland
test. We must, therefore, deny the application on the merits.
Applicant was indicted on three counts of trafficking in cocaine in violation of R.C. 2925.03. After a trial to the court, applicant was found guilty of the first count — trafficking in cocaine in an amount more than one thousand grams — and found not guilty of the other two counts. The trial court imposed the mandatory ten-year sentence as well as an additional year because the trial court found that applicant was a major drug offender. See R.C. 2925.03(C)(4)(g), 2929.14(A)(1) and 2929.14(D)(3)(b); TR. 389-390, 404-405.
This court remanded the case for resentencing, however, because the indictment did not contain a specification charging applicant with being a major drug offender as required by R.C. 2941.1410. On remand, the trial court reimposed the sentence of ten years with credit for time served.
In this application for reopening, applicant argues that she was denied the effective assistance of appellate counsel because her appellate counsel did not assign as error that the sentence imposed violates state and federal constitutional prohibitions against cruel and unusual punishment.
 The standard of review for determining the constitutionality of [appellant's] sentence is plenary. Ohio courts have held that a sentence does not violate the constitutional prohibition against cruel and unusual punishment if it is not so greatly disproportionate to the offense as to "shock the sense of justice of the community." See State v. Chaffin (1972), 30 Ohio St.2d 13, 17, 59 O.O.2d 51, 53-54, 282 N.E.2d 46, 49. See, also, State v. O'Shannon (1988), 44 Ohio App.3d 197, 542 N.E.2d 693. Moreover, the Supreme Court of the United States has provided that "[r]eviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals." Solem v. Helm (1983), 463 U.S. 277, 290, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637, 649-650. In either case, the ultimate decision is whether the punishment, as a matter of law, violates the United States or the Ohio Constitution.
 The Supreme Court concluded that proportionality analysis "should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." Id. at 292, 103 S.Ct. at 3011, 77 L.Ed.2d at 650. The court, however, noted that "no one factor will be dispositive in a given case." Id. at 290, 103 S.Ct. at 3010, 77 L.Ed.2d at 649, fn. 17.
 In Harmelin v. Michigan (1991), 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836, a plurality of the Supreme Court focused on the proportionality requirement set forth in Solem and eliminated the need for comparative proportionality analysis in every case. "The proper role for comparative analysis of sentences, then, is to validate an initial judgment that a sentence is grossly disproportionate to a crime." Id. at 1005, 111 S.Ct. at 2707, 115 L.Ed.2d at 872. Therefore, where "a comparison of [a defendant's] crime with his sentence does not give rise to an inference of gross disproportionality," a comparative analysis with other sentences need not be performed. See id.
State v. Lazada (1995), 107 Ohio App.3d 189, 191-192,667 N.E.2d 1292, 1293-94 [Eighth Dist.]
Applicant argues that the punishment is disproportionate in this case. She contends that, because she did not actually furnish cocaine for sale, punishing her conduct as an "offer to sell" under R.C. 2925.03(A) by imposing a ten-year sentence constitutes cruel and unusual punishment.
Applicant's position ignores the sequence of facts summarized by this court in the journal entry and opinion disposing of applicant's direct appeal:
 The Euclid Police Department and Carribean Task Force launched an investigation into a drug trafficking operation believed to be servicing the Euclid and Cleveland areas. A confidential informant working for the investigation was an old friend of defendant and asked her where she was getting her drugs. Defendant told the informant she was getting the drugs from her boyfriend, Jesse Armstrong. The informant asked defendant if she could obtain large quantities of drugs from Armstrong. Defendant stated she did not know but would check with Armstrong.
 Over the course of two months, defendant would run into the informant and he would always ask defendant if she had talked to Armstrong. Eventually defendant, the informant, and a detective, posing as the "money man," began having phone conversations about the sale of drugs. Most of these phone calls were taped by the police. The informant and defendant set up a deal for early November. On November 8, 1996, defendant called the informant and stated she was getting out of work at 5:00 p.m. and would pick up the drugs at that time. Defendant and the informant decided to meet at a gas station. In a subsequent conversation, defendant told the informant the cocaine was not ready because it was being "cooked." The detective then had a phone conversation with defendant and agreed to have one kilo "rocked up" and one kilo in "powder." Defendant told the detective to meet her and her people at a local bar. Defendant and Armstrong met the informant and detective at the bar. The price of the cocaine and delivery were discussed. However, the deal was called off because defendant and Armstrong were suspicious.
 A few weeks later, defendant had another phone call with the detective and the detective asked if "the store was still open." Defendant replied "yes." At this time, the detective and defendant set a price of $24,000 per kilo. On November 25, 1996, Armstrong delivered to the detective a test sample of what proved to be cocaine. Later that day, Armstrong and the detective met to make the deal at which time Armstrong was arrested while having one kilo of cocaine in his possession. Subsequently, defendant was arrested.
 Defendant waived her right to a jury trial and the case proceeded to a bench trial. Armstrong stated he was testifying in exchange for receiving a lesser sentence. He testified the meeting at the bar was set up by defendant and the only purpose of the meeting was to sell drugs. He also testified on a prior occasion he gave a one-half kilo of cocaine to defendant to sell to another person. The detective then testified that defendant participated in the meeting at the bar where the price and delivery were discussed. The detective stated he discussed the form of the cocaine with defendant and that he would receive one kilo in "hard crack form" and "one soft." He then stated the arrangements to buy the cocaine were made with defendant.
State v. Edwards (Oct. 29, 1998), Cuyahoga App. No. 73480, unreported, at 2-3. Obviously, applicant's characterization of her role as "simply to introduce the principals," Application at 3, understates her involvement.
Given the record in this appeal, we cannot conclude that appellate counsel was ineffective for failing to assign the error proposed by applicant. Over more than two months, applicant actively participated in discussions which culminated in what would have been a transfer of a substantial quantity of cocaine. The general assembly has determined that those convicted of selling or offering to sell such a quantity must receive the maximum penalty — a ten-year prison term. As Lazada, supra,
indicates, a reviewing court would be required to "grant substantial deference" to the general assembly's determination — which permitted the trial court no discretion in sentencing.
We cannot, therefore, concluded that appellate counsel was deficient for failing to challenge applicant's ten-year sentence as being unconstitutionally cruel and unusual punishment. Likewise, Lazada, supra, requires that we conclude that applicant has not demonstrated that there was a "reasonable probability" that she would have prevailed if appellate counsel had assigned this constitutional challenge as error during her direct appeal. Applicant has not, therefore, met her "burden of establishing that there was a genuine issue as to whether [s]he has a `colorable claim' of ineffective assistance of counsel on appeal." Spivey, supra.
Accordingly, the application for reopening (Motion No. 3535) is denied.
PORTER, A.J., and SWEENEY, JAMES D., J., CONCUR.
MICHAEL J. CORRIGAN, JUDGE.